## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**BOBBY EUGENE RODDY,**
**a.k.a. RUNNING COUGAR**

        **Plaintiff,**

    **v.**                                **Civil action no. 5:05cv170**
                                                **(Judge Stamp)**

**STATE OF WEST VIRGINIA,**
**OFFICE OF THE GOVERNOR,**
**MARY JO THOMPSON, DANIEL E. KIMBLE,**
**JIM RUBENSTEIN, M.H. BAUSO,**
**D.L. STAFFORD, WILLIAM FOX,**
**TONY LeMASTERS, DON SPRINGSTON,**
**DAN KIMBLE, WILLIAM D. HALE,**
**BARBARA RENNER, REV. KENT HOBBS,**
**ROBERT ADAMS, DENNIS MUELLER,**
**DUANE MUNDAY, SUSAN WADE,**
**JOE CARROLL, MICHAEL HENTHORN,**
**JANE DOE, JOHN DOE, JAELL FULTON**
**CORRECTIVE MEDICAL SERVICES,**
**DIANE SHINGLER, KAROL PAYNE,**
**VICKIE CAIN, TAMMY HARLAN,**
**PATRICK MIRANDY, SHIELA RAMSEY,**
**JACK STALLINGS, MISTY ADAMS,**
**CAPT. ANDERSON, and KATY PRATT,**

        **Defendants.**

## REPORT AND RECOMMENDATION

### I. PROCEDURAL HISTORY

On July 14, 2005, the plaintiff, an inmate at St Marys Correctional facility [hereinafter referred to as St. Marys], filed a *pro se* complaint in the United States District Court for the Southern District of West Virginia pursuant to 42 U.S.C. §1983. On October 3, 2005, the Southern District of West Virginia entered an order transferring the case to the United States District Court for the Northern District of West

Virginia.  On October 21, 2005, the plaintiff filed two exhibits with a letter asking to add four additional defendants to his complaint. (Doc. 10 & 11)  On November 7, 2005, the plaintiff filed three exhibits with a letter asking to add two additional defendants to his complaint.  On that same date, the plaintiff also filed a Motion for a Restraining Order.  (Doc. 14)  On December 21, 2005, an Order was entered granting the plaintiff leave to proceed without prepayment of fees.  On February 1, 2006, the plaintiff filed a Motion to Amend Petition.  (Doc. 31)  On February 22, 2006, twenty eight of the defendants named in the plaintiff's initial complaint and "supplemental pleadings" filed a Motion to Dismiss and a Memorandum in support thereof.  (Docs. 41 & 42)  On February 23, 2006, an additional defendant filed a Motion to Dismiss (Doc. 43), and on February 24, 2006, two other defendants filed an answer to the Complaint. (Doc. 45)   Finally, on April 20, 2006, the plaintiff filed a Motion to Further Amend Petition. (Doc. 47)  On May 19, 2006, the Court entered an Order denying without prejudice the defendants' Motions to Dismiss pending screening as required by 28 U.S.C. §§1915(e)(2)(B) and 1915(e)(2)(A). This case is before the undersigned for an initial review and report and recommendation pursuant to LR PL P 83.01 et seq., and 28 U.S.C. §1915(e)(2).

## II. <u>THE COMPLAINT</u>

On July 14, 2005, the plaintiff filed a Complaint against the following defendants: the State of West Virginia; the Office of the Governor; Mary Jo Thompson, Director of Governor's Office of Constituents; Daniel E, Kimble, Director Public Division, Governor's Office; Jim Rubsenstein, Commissioner, West Virginia DOC; M.H. Bauso, West Virginia State Trooper; D.L. Stafford, West Virginia State Trooper; William Fox, Warden at St. Marys; Tony Le Masters, Deputy Warden at St. Marys; Don Springston, Associate Warden of Operations at St. Marys; Dan Kimble, Unit Manager at St. Marys; William Hale, Magistrate at St. Marys; Barbara Renner, Paralegal at St. Marys; Kent Hobbs, Chaplain at St. Marys; Corporal Robert Adams, State Shop at St. Marys; Dennis Mueller, COII  at St.

Marys; Duane Munday, COII at St. Marys; Michael Henthorn, Sergeant at St. Marys; Susan Wade, former employee at St. Marys; Joe Carroll, former employee of St. Marys; and Jane Doe and John Doe. (Doc. 9-3, pg. 17). In his complaint, the plaintiff, who is a Native American, sets forth eight separate counts for relief.

In the first count of his complaint, the plaintiff alleges that upon his arrival at St. Marys on March 19, 2004, Reverend Kent Hobbs found numerous religious items in his possession that were not permitted at St. Marys unless they were pre-approved. The plaintiff alleges that he presented Reverend Hobbs with a memo from Commissioner Rubenstein permitting these items as well as internal memos from the wardens at the Mount Olive Correctional Facility and Huttonsville Correctional Complex also allowing these items. Because Reverend Hobbs found that these memos were not in the plaintiff's file, he wrote him up for "fraudulent representation." The items were then confiscated. Following a hearing in front of Magistrate William D. Hale, the plaintiff was found guilty and given ten days loss of privileges.

Count two of the complaint alleges that Joe Carroll, a former employee at St Marys wrote the plaintiff up for refusing an order. More specifically, it appears that the plaintiff was ordered to complete paperwork to mail out the religious items that were confiscated when he arrived at St. Marys. The plaintiff acknowledges that he did not fill out the paperwork but only because he is functionally illiterate and is unable to read or write. Following another hearing in front of Magistrate Hale, the plaintiff was found guilty and given fifteen days loss of privileges.

Count three of the complaint alleges that Cpl. Robert Adams also wrote the plaintiff up for refusing an order, again for not mailing out the confiscated religious items and for using his given Indian name of Running Cougar. After a third hearing before Magistrate Hale, the plaintiff was sentenced to thirty days punitive segregation and thirty days loss of privileges.

Count four of the complaint alleges that COII Duane Munday wrote the plaintiff up for a Class

I, Assault and Battery. The plaintiff claims that this was a retaliatory act by Munday because another "unnamed inmate" had an on-going criminal investigation against Munday's brother, who is also an employee at St. Mary's. The plaintiff further alleges that this "un-named inmate" is a personal close friend of the plaintiff and is also a member of the Native American Religious Circle. However, as noted by the plaintiff, this write up was dismissed.

Count five of the complaint alleges that Susan Wade, the former postal supervisor at St. Marys opened and tampered with the plaintiff's incoming legal mail from the ACLU which was signed by staff attorney Terri S. Bauer.

Count six of the complaint alleges that Barb Renner, a paralegal at St. Mary's seized documents from the plaintiff while she was copying materials for him. Specifically, the plaintiff alleges that Ms. Renner seized a photocopy of an inmate's BIA card, or Bureau of Indian Affairs membership card. The plaintiff maintains the card was an exhibit that he was going to send to the U.S. District Court for the Southern District of West Virginia. The plaintiff further maintains that this evidence has never been returned to him.

Count seven of the complaint alleges that in December of 2004, the plaintiff contacted the West Virginia State Police in attempt to pursue a criminal investigation against Barb Renner, William Fox, and Tony LeMasters for miscellaneous institutional violations. On September 28, 2004, the plaintiff was interviewed by West Virginia State Troopers, M. H. Bauso and D.L. Stafford, and was advised that it was an institutional issue and was not an area in which the state police would get involved.

Count eight of the complaint alleges that COII Dennis Mueller called the plaintiff a "Raging Field Mouse." The plaintiff states that this comment was highly offensive.

### III. CLAIMS OF THE COMPLAINT

Based on the aforementioned facts, the plaintiff asserts the following grounds for relief:

(1) Racist Hate Crimes;

(2) Mental Anguish as the result of threats, intimidation, and retaliatory acts;

(3) Violation of the 8th Amendment;

(4) Defamation of Character;

(5) Discrimination;

(6) Violation of the American with Disabilities Act;

(7) Violation of the 1st Amendment;

(8) Violation of the 14th Amendment;

(9) Illegal Mail tampering; and

(10) Illegal Search and Seizure.

As relief, the plaintiff seeks an unconditional release as well as $40,000,000 in damages. As well, the plaintiff seeks criminal charges against all the defendants. Finally, the plaintiff requests that all court fees, taxes, attorney and filing fees be paid by the defendants and that a temporary restraining order be issued against the defendants.

## IV.  STANDARD OF REVIEW

Because plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious. Pursuant to 28 U.S.C. §1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. Complaints which are frivolous or malicious, must be dismissed. 28 U.S.C. §1915(e).

A complaint is frivolous if it is without merit either in law or in fact. Neitzke v. Williams, 490

U.S.319, 325 (1989).  However, the Court must read pro se allegations in a liberal fashion.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).  A complaint filed *in forma pauperis* which fails to state a claim under Fed.R.Civ.P 12(b)(6) is not automatically frivolous.  <u>See</u> <u>Neitzke</u> at 328.  Section 1915(e) dismissals should only be ordered when the legal theories are "indisputably meritless,"[1] or when the claims rely on factual allegations which are "clearly baseless."  <u>Denton v. Hernandez</u>, 504 U.S. 25, 32 (1992).  This includes claims in which the plaintiff has little or no chance of success.  <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976).

## V.  Analysis

### A.  Disciplinary Proceedings

Counts one, two and three of the plaintiff's complaint seem to allege that three separate disciplinary proceedings violated numerous constitutional provisions.  Although a prisoner's rights may be diminished by the needs and circumstances of a prison environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for a crime.  <u>Wolff v. McDonnell</u>, 418, U.S. 539 (1974).  Under <u>Wolff</u>, States may in certain circumstances create liberty interests that are protected by the Due Process Clause.  "But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relationship  to the ordinary incidents of prison life."  <u>Sandin v. Conner</u>, 515 U.S. 572, 575 (1995).  However, the plaintiff's loss of privileges and punitive segregation do not present the type of atypical, significant deprivation in which the State of West Virginia might arguable create a liberty interest.[2]

---

[1]<u>Id</u>. at 327.

[2]The plaintiff's loss of privileges included: (1) telephone  privileges, except calls to and from attorneys; (2) loss of reading library privileges, but not law library privileges; (3) recreation privileges as distinct from right to exercise; (4) access to inmate exchange, except for purchases of non-

Accordingly, the plaintiff is not entitled to the full due process protections afforded when a significant liberty interest is involved.[3]

However, the plaintiff is entitled to a hearing that comports with the State of West Virginia Department of Corrections Policy Directive Number 325.00 dealing with discipline of inmates. A review of that policy directive and the exhibits tendered by the plaintiff establishes that the three disciplinary hearings comported with those requirements.[4] Accordingly, the disciplinary hearings did not violate any constitutional right, and the plaintiff's first three claims of the complaint fail to state a cause of action and should be dismissed.

## 2. RETALIATORY ACTS

In Count 4 of his complaint, the plaintiff alleges that COII Duane Davis wrote him up for a Class

---

prescription medication, personal hygiene items and writing materials; (5) weekly draw from vending machines; (6) access to arts and crafts and music room areas; (7) possession of personal radio, television, stereo, and other electrical appliances or access to television viewing; (8) pass or furlough privileges; and (9) visitation privileges, excluding attorney visits. Punitive segregation involves restriction to a housing unit and appears to differ solely in the amount of exercise time that is allotted based upon the area in which the inmate is housed and to that unit's designated exercise area.

[3]In Wolff, supra, the United States Supreme Court addressed the due process that must be provided during a prison disciplinary proceeding involving significant liberty interests. According to the Supreme Court, the process requires as follows:

(1)     giving the prisoner written notice of the charges at least 24 hours before he appears for his disciplinary hearing;

(2)     providing the prisoner a written statement by the fact finders as to the evidence relied on and reasons for the disciplinary action;

(3)     allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;

(4)     permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and

(5)     providing impartial fact finders.

[4]In comparing the DOC policy directive regarding discipline of inmates, it appears that all of the Wolff requirements are included except the need to give reasons for the disciplinary action.

I Assault and Battery. The plaintiff claims that this was a retaliatory act. First, plaintiff's claims of retaliation have not been exhausted and could be dismissed on that basis alone. However, 42 U.S.C. §1997e(c)(2) provides "[i]n the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies." The undersigned has considered the claim and recommends that it be dismissed for failure to state a claim upon which relief may be granted.

In order to sustain a claim based on retaliation, a plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Therefore, "in forma pauperis plaintiffs who claim that their constitutional rights have been violated by official retaliation must present more than naked conclusory allegations of reprisal to survive [§1915(e)(2)(B)]. Id. Furthermore, claims of retaliation are treated with skepticism in the prison context. Cochran v. Morris, 73 F.3d 1310, 1317 (44th Cir. 1996). Additionally, a plaintiff alleging that government officials retaliated against her in violation of her constitutional rights must demonstrate, *inter alia*, that she suffered some adversity in response to her exercise of protected rights." American Civil Liberties Union of Maryland Inc., v. Wicomico County, Md., 999 F.2d 780, 785 (4th Cir. 1993).

In the instant case, the plaintiff has made a naked conclusory statement of reprisal. As such, he has failed to state a claim that can survive the initial screening process, and Count 4 of the Complaint should be dismissed for failure to state a claim upon which relief may be granted.

### 3. LEGAL MAIL

In count five of the complaint, the plaintiff alleges that Susan Wade, the former postal supervisor at St. Marys opened and/or tampered with his incoming legal mail from the ACLU. Interference with

legal mail implicates a prison inmate's rights to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution. However, as was implicitly recognized in Wolff, supra at 574-77, prison official may open and inspect incoming prisoner mail in furtherance of the state's interest in barring the entry of contraband into a prison. In Wolff, the Court was presented with the issue of the extent to which prison authorities may open and inspect incoming mail from attorneys in the presence of the prisoner or whether such mail must be delivered unopened if normal detection techniques failed to indicate the presence of contraband. Id. at 575. The Court held that the prison management "by acceding to a rule whereby the inmate is present when mail from attorneys is inspected, have done all, and perhaps even more, than the Constitution requires." Id. at 577.

Policy Directive Number 503.00 from the State of West Virginia Division of Corrections outlines the procedure for handling inmate mail. Attorney/Client Mail is defined as "any written correspondence to or from an inmate and his/her attorney or record. Such correspondence must clearly state "legal mail" on the envelope or must clearly indicate it is from the inmate's attorney of record." (Policy Directive Number 503.00, pg. 1). The policy further provides that "Attorney/Client mail may be opened and inspected, in the inmate's presence. However it may not be read." (Policy Directive Number 503.00, pg. 7). Therefore, if the letter from the ACLU constituted "Attorney/Client" mail, opening it outside the plaintiff's presence would violate the Department's policy and perhaps state a claim for action.

However, the letter in question, dated May 3, 2004, is simply a general response to the plaintiff's request for assistance. It is clear that the attorney, who signed the letter, is not Plaintiff's attorney of record and it contains no specific information relevant to any legal action. (Doc. 9-5, pg. 9). Additionally, during the course of his grievance procedure regarding this matter, the plaintiff acknowledged that it was not legal mail. (Doc. 9-5, pg. 10). Nor can this letter be construed as privileged mail, which also could

be opened only in his presence.[5]  Finally, even if this letter constituted "legal mail", the plaintiff has made

no allegation that the defendant took or was responsible for actions that "hindered [his] efforts to pursue

a legal claim."  Lewis v. Casey, 518 U.S. 343,  351 (1996).  Accordingly, count five of the complaint also

fails to state a claim for relief and should be dismissed.

## 4. SEIZURE OF PROPERTY

In count six of the complaint, the plaintiff alleges that Barb Renner, an institutional paralegal,

illegally seized a document from him while she was copying materials for him involving a pending-

ongoing federal case.  In reviewing the exhibits submitted by the plaintiff, it is apparent that the document

which was confiscated was a Bureau of Indian Affairs membership card belonging to an individual other

than the plaintiff.  Consequently, it was confiscated as contraband.  Upon receiving the plaintiff's Level

III Grievance Appeal, Commissioner Rubenstein remanded the matter to Warden Fox for a detailed

discussion as to the exact description and content of the document in question and why it was considered

contraband. (Doc. 9-5, pg. 35).  Upon receiving the Warden's response, Commissioner Rubenstein

supported the decision to confiscate the card "inasmuch as it is an excessive risks [sic] to security and the

orderly operation of an institution to allow one inmate to possess identifying information from another

inmate. (Doc. 9-5, pg 36).

The United States Supreme Court has long recognized that "maintaining institutional security and

preserving internal order and discipline are essential goals that may require limitation or retraction of the

retained constitutional rights of both convicted prisoners and pretrial detainees."  Bell v. Wolfish, 441,

U.S. 520, 559 (1979).  Furthermore, the Court has acknowledged that the problems that arise in routine

---

[5]The DOC Policy Directive defines Privileged Mail as letters to or from a specified class of
persons and organizations including but not limited to the following: courts; counsel; officials of the
West Virginia Division of Corrections; state and local Chief Executive Officers;
administrator/designee of the Division of Corrections' Inmate Grievance System; and members of the
West Virginia Board of Probation and Parole.  (Policy Directive Number 503.00, pg. 1).

operation of a correctional facility are not easily solved. "Therefore, prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Id. at 560.

Here, it is not unreasonable to believe that possession by an inmate of another inmate's identifying information might pose a security risk. Therefore, the prison's interest in maintaining security outweigh's any arguable constitutional right that the plaintiff might have to possess another individual's BIA card. Furthermore, to the extent that the plaintiff alleges that the confiscation of that card somehow interfered with his ability to pursue his case filed in the Southern District of West Virginia, that claim is more appropriately presented to that Court.[6]

## 5. **ACTIONS BY THE STATE TROOPERS**

In count 7 of the complaint, the plaintiff notes that he contacted the West Virginia State Police in an attempt to pursue a criminal investigation and or a felony complaint against several employees of St. Mary's for miscellaneous institutional violations. Troopers Bauso and Stafford interviewed the plaintiff on December 28, 2004. The plaintiff alleges that they then refused to get involved because they deemed it "an institutional issue." The plaintiff maintains that this failure to act on the part of the troopers caused him mental anguish, denied him access to the Courts, deprived him of due process, amounted to discrimination, and violated his right to equal protection.

First, the undersigned notes that the plaintiff has not indicated whether he has sued Troopers Bauso and Stafford in their official or individual capacities, or both. State officials, "acting in their official capacities" are outside the class of "persons" subject to liability under §1983. Will v. Michigan

---

[6]The plaintiff initiated Civil Case # 5:03cv612, a §1983 action on July 1, 2003 in the Beckley Division of the Southern District of West Virginia. The case remains open and is currently assigned to Judge Thomas E. Johnston with a referral to Magistrate Judge Vabndervort.

Dept. Of State Police, 491 U.S. 58, 71 (1989). In reaching this decision, the Court determined that a suit against a state official in his or her official capacity is the equivalent to a suit against the state itself. Id. at 65. Therefore, the Court concluded that, absent any congressional intent to override states' immunity, the eleventh amendment bars §1983 suits against state employees in their official capacity. See id. At 63-64. However, state officials, sued in their individual capacities are "persons" within the meaning of §1983. While official-capacity defendants, who are not "persons" because they assume the identity of the government that employs them, Will, supra, at 71, n.10., officers sued in their personal capacity come to the court as individuals and fit within the statutory term "person," cf. 491 U.S., at 71, n.10. Therefore, a suit against an official in his individual capacity does not seek payment from the state treasury, but from the personal funds of the individual, and therefore is not a suit against the state or the state office that the individual occupies, and the individual is not protected by the holding of Will. See Goodman v. Rockefeller, 947 F.2d 1186 (4th Cir. 1991).

However, even if the plaintiff has sued these two defendants in their individual capacity, the plaintiff has not stated a claim against them. In order to state a claim under 42 U.S.C. §1983, the plaintiff must demonstrate that a person acting under color of state law deprived him of rights guaranteed by the Constitution or federal laws. Rendall-Baker v. Kohn, 457 U.S. 830, 838 (1982). Pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, "[a] pleading which sets forth a claim for relief, whether an original claim, counter-claim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends...(2) a short and plain statement of the claim *showing that the pleader is entitled to relief*, and (3) a demand for judgment for the relief the pleader seeks." (Emphasis added) "And, although the pleading requirements of Rule 8(a) are very liberal, more detail is required than the bald statement by plaintiff that he has a valid claim of some type against the defendant." Migdal v. Rowe Price-Fleming International, Inc., 248 F.3d 321, 326 (4th Cir. 2001)

(citation and internal quotations omitted). "This requirement is by no means onerous; instead, it is designed to ensure that the complaint will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of the claim." Slade v. Hampton Roads Regional Jail, 407 F.3d 243, 252 (4th Cir. 2005) (internal citations omitted).

Here, the claims against the two state police officers are insufficiently pled. The plaintiff's bald statement that various of his constitutional rights have been violated is insufficient to state a claim and they therefore should be dismissed.

### 5. RACIAL SLURS

In count 8, the final count of his complaint, the plaintiff alleges that COII Dennis called him a "Raging Field Mouse", which he found to be highly offensive. Assuming *arguendo* that this amounts to a racial slur, the plaintiff has not stated a claim under 42 U.S.C. §1983 for a violation of the United States Constitution or federal laws.

Name-calling alone cannot form the basis of a constitutional violation because a person has no liberty interest at stake. Numerous courts around the country have held that "even the most abusive verbal attacks do not violate the constitution." Oltarzewski v. Rggiero, 830 F.2d 136, 139 (9th Cir. 1987); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979). Nor do words or threats amount to assault under 42 U.S.C. §1983. Pierce v. King, 918 F.Supp. 932 (E.D.N.C. 1996), aff'd, 131 F.3d 136 (4th Cir. 1997), cert. granted and judgt. vacated on other grounds, 525 U.S. 802 (1998). Likewise racial epithets do not implicate constitutional rights because, "no matter how abhorrent or reprehensible" a racial epithet may be, it cannot itself form the basis of a §1983 claim. See Wade v. Fisk, 176 A.D.2d 1087, 1089, 575 NYS.2d 394, ___ (1991)

Furthermore, even though the plaintiff claims that he was defamed by the defendant's use of a

racial slur, his claim is not compensable under present law. Damages for defamation are not recoverable under §1983 because the defamed person has not been deprived of any right, privilege or immunity secured to him by the federal constitution or laws of the United States. Ellingburg v. Lucas, 518 F.2d 1196 (8th Cir. 1975); McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir.), cert. denied, 464 U.S. 998 (1983). Accordingly, Davis cannot make a claim for defamation.

In sum, plaintiff's claim, even if true, fails to state a claim for relief under 42 U.S.C. §1983. Accordingly Count 8 of the complaint likewise should be dismissed.

## 6. RELIGIOUS DISCRIMINATION

The undersigned is mindful that the plaintiff has alleged that certain items relating to his Native American heritage were taken from him when he entered St. Marys and he was required to mail those items out of the facility. In reviewing the exhibits tendered by the plaintiff, it appears those items were: (1) homemade pipe bowl; (2) homemade pipe stem; (3) 8 feathers; (4) can of sage; (5) incense burners and (6) red towl. It is not clear whether these items have been returned to the plaintiff. Their initial taking may have violated his First Amendment right to exercise his religion.

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action "with respect to prison conditions" under 42 U.S.C. §1983 must first exhaust all available administrative remedies. 42 U.S.C. §1997e. Exhaustion as provided in §1997e(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). While the phrase "with respect to prison conditions" is not defined in 42 U.S.C. §1997e, the Supreme Court has determined that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516 (2002).[7]

---

[7]In Porter, an inmate sued the correctional officers who had severely beaten him. The inmate alleged that the correctional officers "placed him against a wall and struck him with their hands, kneed him in the back, [and] pulled his hair." Porter, 534 U.S. at 520.

Moreover, exhaustion is even required when the relief the prisoner seeks, such as monetary damages, is not available. Booth, 532 U.S. at 741.

In addition, although generally, the exhaustion of administrative remedies should be raised by the defendant as an affirmative defense, the court is not foreclosed from dismissing a case *sua sponte* on exhaustion grounds. See Anderson v. XYZ Prison Health Services, 407 F.3d 674, 681 (4th Cir. 2005). If the failure to exhaust is apparent from the complaint, the court has the authority under 28 U.S.C. §1915 to dismiss the case *sua sponte*. Id. at 682.

The alleged actions of the defendants with respect to the plaintiff's Native American religious items, clearly constitute actions "with respect to prison conditions" within the meaning of the PLRA, and the requirement of exhaustion of administrative remedies applies to those actions and any effects of those actions.

The West Virginia Department of Corrections has established a three level grievance process for prisoners to grieve their complaints in an attempt to resolve the prisoners' issues. The first level involves filing a G-1 Grievance Form with the Unit Supervisor or appropriate Staff Supervisor. If the inmate receives no response or is unsatisfied with the response received at Level One, the inmate may proceed to Level Two by filing a G-2 Grievance Form with the warden/administrator. Finally, the inmate may appeal the Level 2 decision to the Commission of the Division of Corrections.

It is clear from the volume of exhibits submitted by the plaintiff that he well understands the grievance process. Yet, none of the many grievances he has filed in any way deals with the confiscation of those religious items that he brought with him to St. Marys when he was transferred from the Huttonsville Correctional Center. Therefore, to the extent that the plaintiff is attempting to raise a claim with regard to the confiscation of those items, the same must be dismissed for failure to

exhaust administrative remedies.

## IV. <u>MOTIONS TO AMEND</u>

On October 21, 2005, the plaintiff filed a letter asking that two exhibits be added to his file and that Karol Payne, Rachel Glasscock, Jaell Fulton and Shiela Ramsey be added to his list of defendants. The letter was docketed as a Motion to Amend. (Doc. 10)  On November 7, 2005, the plaintiff filed another letter which has been docketed as a Motion to Amend. (Doc. 14)  In it, the plaintiff asks to add Patrick Mirandy, AWP and Sandy Tanczyn, Unit Manager as additional defendants.  The plaintiff also asks that three pages which he attached be added as evidence.  On February 1, 2006, the plaintiff filed a document titled Motion to Amend Petition. (Doc. 31)  In it, he seeks to increase his request for monetary damages to $140,000,000.00 due to continuing violations of his constitutional rights.  In addition, he seeks to add the following defendants to his petition: Jaell Fulton, Correctional Medical Services, Diane Shingler, Karol Payne, Vickie Cain, Tammy Harlan, Patrick Mirandy, Misty Adams, Jack Stollings, Shiela Ramsay, Capt. Anderson, and Katy Pratt.  As well, he seeks a temporary restraining order against the defendants for continued violations of his constitutional rights.  Finally, on April 20, 2006, the plaintiff filed a Motion to Further Amend Petition. (Doc. 47).  He seeks to amend the amount of monetary damages to $340,000,000.00 and again seeks a TRO.[8]

Federal Rules of Civil Procedure 15(a) provides that "a party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served..  At the time the plaintiff filed his first motion to amend on October 21, 2005, no responsive pleading had been filed, and therefore, as a matter of course, Karol Payne, Rachel Classcock, Jael Fulton and Shiela Ramsey  are added to the list of defendants.  However, because the "pleading" contains no facts or other information from which

---

[8]The plaintiff also moves to dismiss the defendant's Motion to Dismiss Plaintiff's Complaint. Inasmuch as Court *sua sponte* denied the Motion to Dismiss without prejudice, the plaintiff's request for the same need not be addressed.

the Court can reasonably identify the plaintiff's claims against these defendants, the first amendment should be dismissed.

After an initial amendment, Rule 15(a) provides that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Furthermore, "[a]n amended pleading is one which clarifies or amplifies a cause of action which can be identified with certainty as the same cause of action originally pleaded or attempted to be pleaded. It is a perfection of an original pleading rather than the establishment of a new cause of action." Superior Mfg. Corp. V. Hessler Mfg. Co., 267 F.2d 3w02, 304 (10th Cir. 1959), cert. denied, 361 U.S. 876 (1959).

The plaintiff's second motion to amended seeks to add Patrick Mirandy and Sandy Taczyn as additional defendants. Again the face of the pleading contains no information regarding the claims against these individuals. However, in reviewing all of the paperwork submitted by the plaintiff, it appears that the plaintiff is claiming that these two individuals have denied other inmates access to their attorneys as well as to the media. In addition, the plaintiff alleges that these two individuals have slandered other inmates. However, the plaintiff does not have standing to assert claims on behalf of other inmates in this action. See Laird v. Tatum, 408 U.S. 1 (1972). See also Valley Forge Christian College v. Americans United for Separation of Church & State, 454 U.S. 464,482 (1982); Hummer v. Dalton, 657 F.2d 621, 625-626 (4th Cir. 1981)(a prisoner cannot act as a "knight-errant" for others). Thus, because the plaintiff has no standing to bring a claim on behalf of another person, the plaintiff has failed to state a claim against these two defendants, and the plaintiff's second motion to amend should be denied.

The plaintiff's third motion to amend seeks to again add Jaell Fulton and Patrick Mirandy as defendants, as well as Corrective Medical Services, Diane Shingler, Karol Payne, Vickie Cain, Tammy Harlan, Misty Adams, Jack Stollings, Shiela Ramsey, Capt. Anderson, and Katy Pratt. Again the plaintiff

has failed to provide the Court with the Rule 8(a) requirements of a short and plain statement of the claim showing that he is entitled to relief against these individuals. Furthermore, in reviewing all the documents submitted by the plaintiff as exhibits, it appears that the plaintiff's only possible claim against Jaell Fulton, Supervisor of Corrective Medical Services, relates to medical records the plaintiff requested under the Freedom of Information Act. As well, the plaintiff's only possible claims against Diane Shingler, Karol Payne, Vickie Cain and Tammy Harlan relate to "Freedom of Information Papers". Clearly these claim are wholly unrelated to any of the claims raised in his original complaint and, therefore, the plaintiff's motion to amend as it relates to these defendants should be denied. At least some of the claims against Misty Adams, Jack Stollings and Capt. Anderson appear to relate to a violation report regarding an incident on January 14, 2006, and a subsequent disciplinary hearing on January 18, 2006, which resulted in the plaintiff losing all privileges for fifteen days. As with the claims regarding disciplinary hearings raised in his original complaint, because no liberty interest was involved and the disciplinary procedure complied with Policy Directive Number 325, dealing with discipline of inmates, the plaintiff has not stated a claim against either of these two defendants in this regard. Additional claims against Misty Adams and Jack Stallings also involve Don Springston and Shiela Ramsey and are tied to an incident on January 4, 2006, when the plaintiff alleges that personal mail to his family that contained legal mail was opened and read without his knowledge and outside his presence. Outgoing mail may be opened and inspected by prison officials. Altizer v. Deeds, 191 F.3d 540, 548-549 (4th Cir. 1999) (recognizing a different standard may apply to legal mail.) Here, the plaintiff acknowledges that what he characterizes as "legal mail" was contained in personal mail sent to his family. Under Policy Directive Number 503.00 0f the Division of Corrections, personal mail falls under the category of general correspondence and the DOC may randomly inspect and read such correspondence. (Policy Directive Number 503.00, pgs. 1, 3) Had the plaintiff wished to insure that his "legal mail" was not opened outside

his presence, he should have followed the DOC's requirements regarding legal mail, a policy which had previously been called to his attention. Accordingly, the plaintiff has failed to state a claim in this regard, as well. The plaintiff's claim against Katy Pratt appears to involve a letter he sent to the Cherokee Nation. He claims that this organization has paperwork he needs to pursue his case in this Court and in the Southern District of West Virginia. He alleges that the letter was opened, read, copied, and held for four days. Because the letter in question is not privileged mail, the prison authorities had the right to open and inspect it for contraband outside thee plaintiff's presence. In addition, the plaintiff has made no allegation that the defendant's conduct "hindered [his] efforts to pursue a legal claim." Lewis, supra at 351. Finally, the undersigned can find nothing in the plaintiff's numerous filings, including exhibits, that in anyway relates to Rachel Classcock. Accordingly, the plaintiff's third motion to amend should be denied for failure to state a claim upon which relief can be granted

The plaintiff's final Motion to Amend seeks to increase his claim for damages to $340,000,000.00 and again seeks a TRO. Because the undersigned concludes that neither the plaintiff's original complaint nor amended complaints state a claim upon which relief can be granted, the plaintiff's motion to amend his damage claim should be denied.

## V. <u>MOTION FOR INJUNCTIVE RELIEF</u>

The standard for granting injunctive relief in this Court is the balancing-of-hardship analysis set forth in <u>Blackwelder Furniture Co. V. Seilig Mfg. Co.</u>, 550 F.2d 189 (4th Cir. 1977). In making this analysis, the Court must consider the following four factors:

(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied,

(2) the likelihood of harm to the defendant is the request is granted;

(3) the likelihood that the plaintiff will succeed on the merits, and

(4) the public interest.

Direx Israel, Ltd. V Breakthrough Medical Coorp., 952 F.2d 802, 812 (4th Cir. 1991)(citation omitted). The "[p]laintiff bears the burden of establishing that each of these factors supports granting the injunction." Id. (citation omitted).

A court will not grant a preliminary injunction unless the plaintiff first makes a "clear showing" that he will suffer irreparable injury without it. Id. The required harm "must be neither remote nor speculative, but actual and imminent." Id. (citations and internal quotation omitted). If such harm is demonstrated, the court must balance the likelihood of harm to the plaintiff if an injunction is not granted and the likelihood of harm to the defendant if it is granted. Id. (citation omitted). If the balance of those two factors "tips decidedly" in favor of the plaintiff, a preliminary injunction will be granted if the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." Rum Creek Coal Sales, Inc. V. Caperton, 926 F.2d 353, 359 (4th Cir. 1991) (citation omitted). However, "[a]s the balance tips away from the plaintiff, a stronger showing on the merits is required." Id. (citation omitted).

In this case, the plaintiff has failed to make any showing that he will be harmed if an injunction does not issue. In fact, aside from asking for an injunction, the plaintiff has made no allegation that he will be harmed without its issuance. Accordingly, it is recommended that the plaintiff's motion for injunctive relief be denied.

## VI.  RECOMMENDATION

In consideration of the foregoing, it is recommended that: (1) the plaintiff's complaint (Doc. 9) be **DISMISSED**; the plaintiff's Amended Petition (Doc. 10) be **DISMISSED**; (3) the plaintiff Motion To Amend (Doc. 14) be **DENIED**; (4) the plaintiff's Motion to Further Amend Petition (Doc. 47) be **Denied**; (5) the plaintiff's Motions for Injunctive Relief (Docs. 1, 14) be **DENIED** and this case be **DISMISSED WITH PREJUDICE.**

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to the pro se plaintiff and any counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.


Dated: July 27, 2006

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE