IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

BOBBY EUGENE RODDY,
also known as Running Cougar,

      Plaintiff,

v.                                   Civil Action No. 5:05CV170
                                            (STAMP)

STATE OF WEST VIRGINIA,
OFFICE OF THE GOVERNOR,
MARY JO THOMPSON, DANIEL E. KIMBLE,
JIM RUBENSTEIN, M.H. BAUSO,
D.L. STAFFORD, WILLIAM FOX,
TONY LeMASTERS, DON SPRINGSTON,
DAN KIMBLE, WILLIAM D. HALE,
BARBARA RENNER, REV. KENT HOBBS,
ROBERT ADAMS, DENNIS MUELLER,
DUANE MUNDAY, SUSAN WADE,
JOE CARROLL, MICHAEL HENTHORN,
JANE DOE, JOHN DOE, JAELL FULTON,
CORRECTIVE MEDICAL SERVICES,
DIANE SHINGLER, KAROL PAYNE,
VICKIE CAIN, TAMMY HARLAN,
PATRICK MIRANDY, SHEILA RAMSEY,
JACK STALLINGS, MISTY ADAMS,
CAPT. ANDERSON and KATY PRATT,

      Defendants.


<u>**MEMORANDUM OPINION AND ORDER**</u>
<u>**AFFIRMING AND ADOPTING, IN PART, REPORT**</u>
<u>**AND RECOMMENDATION OF MAGISTRATE JUDGE**</u>

I.  <u>Procedural History</u>

The above-styled civil action arises out of various allegations by Bobby Roddy ("Roddy"), a/k/a "Running Cougar," that while incarcerated at St. Marys Correctional Facility ("St. Marys"), he was subjected to several civil rights violations. On July 14, 2005, Roddy filed a <u>pro se</u> complaint pursuant to 42 U.S.C. § 1983 against the State of West Virginia and a number of state

officials. Subsequently, on October 3, 2005, the suit was transferred to this Court from the United States District Court for the Southern District of West Virginia.

Since this suit was transferred, Roddy has filed four motions to amend his complaint and a motion for a restraining order. The first three motions to amend, filed on October 21 and November 7, 2005 and February 1, 2006, respectively, sought the inclusion of new exhibits and requested the addition of several new defendants. (Docs. 10, 11, 14, and 31.) The fourth motion to amend, filed on April 30, 2006, seeks to increase the amount of requested monetary damages. (Doc. 47.) The motion for a restraining order was filed on November 7, 2005 and plaintiff renewed his request for such restraining order in his third and fourth motions to amend.

On February 22, 2006, twenty-eight of the defendants named in the plaintiff's initial complaint and "supplemental pleadings" filed a motion to dismiss and a memorandum in support thereof. (Doc. 42.) On February 23, 2006, an additional defendant filed a motion to dismiss. This Court denied the defendants' motions to dismiss without prejudice on May 19, 2006, pending a screening as required by 28 U.S.C. §§ 1915(e)(2)(B) and 1915(e)(2)(A).

The case was referred to United States Magistrate Judge James E. Seibert for an initial review and report and recommendation pursuant to Local Rule of Prisoner Litigation Procedure 83.01, et seq., and 28 U.S.C. § 1915(e)(2). On July 27, 2006, the magistrate

judge issued a report recommending that plaintiff's complaint be dismissed, that all of plaintiff's motions to amend be denied, that plaintiff's motion for a restraining order be denied, and that this case be dismissed with prejudice. On August 7, 2006, Roddy filed an objection to the report and recommendation styled as "Notice of Appeal to a Court of Appeals from a Judgment or Order of a District Court." On August 8, 2006, the magistrate judge issued a supplemental report and recommendation clarifying that it is recommended that plaintiff's second motion to amend (Doc. 31.) also be denied. On August 21, 2006, the plaintiff filed a statement of objections to the report and recommendation.

## II. <u>Discussion</u>

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court must conduct a <u>de novo</u> review of any portion of the magistrate judge's recommendation to which objection is made. As to those portions of a recommendation to which no objection is made, a magistrate judge's findings and recommendation will be upheld unless they are "clearly erroneous." Because objections have been filed, this Court has made an independent <u>de novo</u> consideration of those recommendations to which objections were filed. The remaining recommendations to which plaintiff filed no objections have been reviewed using the clearly erroneous standard.

A.   The Complaint

In his eight-count complaint, the plaintiff alleges that during his incarceration at St. Marys, he was deprived of constitutional rights under both the United States and West Virginia Constitutions.   He asserts as grounds for relief: (1) racist hate crimes; (2) mental anguish as the result of threats, intimidation, and retaliatory acts; (3) violation of the Eighth Amendment; (4) defamation; (5) discrimination; (6) violation of the Americans with Disabilities Act; (7) violation of the First Amendment; (8) violation of the Fourteenth Amendment; (9) illegal mail tampering; and (10) illegal search and seizure.

Based on these allegations, the plaintiff seeks an unconditional release as well as $40,000,000.00 in damages. Additionally, the plaintiff seeks criminal charges against all the defendants.   Finally, the plaintiff requests that all court fees, taxes, attorney and filing fees be paid by the defendants and that a temporary restraining order be issued against the defendants.

Under the Prison Litigation Reform Act ("PLRA"), federal courts are required to screen civil complaints in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.   28 U.S.C. § 1915A.   If, on review, a court finds that the prisoner's allegations are frivolous, malicious, or fail to state a claim upon which relief may be granted, the court

must dismiss the complaint in whole or in part. 28 U.S.C.
§ 1915A(b)(1).

Although some overlap exists in the functional meaning of
"frivolous" and "fails to state a claim" as provided in the PLRA,
the terms are not identical. As noted by the United States Supreme
Court, all frivolous actions are also subject to dismissal for
failure to state a claim; however, all actions subject to dismissal
for failure to state a claim are not necessarily frivolous. See
Neitzke v. Williams, 490 U.S. 319, 326-28 (1989).

The standard for determining failure to state a claim for the
purpose of a PLRA dismissal is identical to the one in Federal Rule
of Civil Procedure 12(b)(6). See Perkins v. Kansas Dep't of Corr.,
165 F.3d 803, 806 (10th Cir. 1999) (noting that "failure to state
a claim" language in the PLRA parallels that of Rule 12(b)(6)).
Accordingly, under that standard, courts must accept the material
facts alleged in the complaint as true, and not dismiss unless it
appears to a certainty that the plaintiff can prove no set of facts
in support of his claim which would entitle him to relief.
Advanced Health Care Servs., Inc. v. Radford Cmty. Hosp., 910 F.2d
139, 143 (4th Cir. 1990).

On the other hand, a frivolous action is one that "lacks an
arguable basis in either law or fact." Neitzke, 490 U.S. at 325.
In making a frivolousness determination, judges not only have "the
authority to dismiss a claim based on an indisputably meritless

legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Id. at 327. Thus, unlike the failure to state a claim standard, in determining frivolity, the court is not bound to accept "clearly baseless" factual allegations as true. See Denton v. Hernandez, 504 U.S. 25, 32 (1992).

1. Counts I, II, and III

Counts I, II, and III of the complaint concern the confiscation of plaintiff's "religious items" and three separate disciplinary proceedings against plaintiff in connection therewith. Specifically, in Count I, Roddy alleges that upon his arrival at St. Marys on March 19, 2004, Reverend Kent Hobbs found several religious items in his possession that were not permitted at St. Marys unless they were pre-approved. The plaintiff alleges that he presented Reverend Hobbs with documentation permitting him to have those items. Because these memos were not in the plaintiff's file, Reverend Hobbs charged the plaintiff with "fraudulent representation." The items were then confiscated. Following a hearing in front of Magistrate Judge William D. Hale, the plaintiff was found guilty and given ten days loss of privileges.

In Count II, plaintiff alleges that Joe Carroll, a former employee at St. Marys, charged the plaintiff with refusing an order regarding completion of paperwork needed for mailing out the

religious items earlier confiscated from the plaintiff. Following another hearing in front of Magistrate Judge Hale, the plaintiff was found guilty and given fifteen days loss of privileges.

In Count III, plaintiff alleges that Robert Adams charged the plaintiff with refusing an order for again not mailing out the confiscated religious items and for using his given Indian name of Running Cougar. After a third hearing before Magistrate Judge Hale, the plaintiff was sentenced to thirty days punitive segregation and thirty days loss of privileges.

In these counts, plaintiff seems to allege two substantively different types of violations by the defendants. First, plaintiff appears to take issue with the fairness of the process he received in the three disciplinary proceedings. Second, plaintiff alleges that certain religious items related to his Native American heritage were taken from him when he entered St. Marys. These allegations will be addressed in turn.

a. <u>Disciplinary Proceedings</u>

Plaintiff alleges that the three disciplinary proceedings against him and the resulting suspension of his privileges[1]

_____

[1]The plaintiff's loss of privileges included: (1) telephone privileges, except calls to and from attorneys; (2) loss of reading library privileges, but not law library privileges; (3) recreation privileges as distinct from right to exercise; (4) access to inmate exchange, except for purchases of non-prescription medication, personal hygiene items and writing materials; (5) weekly draw from vending machines; (6) access to arts and crafts and music room areas; (7) possession of personal radio, television, stereo, and other electrical appliances or access to television viewing; (8)

violated his constitutional rights. Particularly, plaintiff appears to challenge the specific result of each hearing and the fairness of the procedures by which discipline was imposed.

Following a review of the nature of Roddy's lost privileges and the type of procedures afforded him at the disciplinary hearings, the magistrate judge found that Roddy received all requisite due process protections and that no constitutional violations occurred. Therefore, the magistrate judge recommended that Counts I, II, and III be dismissed for failure to state a claim.

Plaintiff's objection to this recommendation regarding Counts I, II, and III merely states that he exhausted all "institutional remedies." This objection is curious, however, because the magistrate judge's recommendation was not based on a failure to exhaust administrative remedies. Nonetheless, because an objection was filed, this Court will conduct a de novo review.

Although prisoners do not shed all constitutional rights at the prison gate, "lawful incarceration brings about necessary withdrawal or limitation of many privileges and rights, a

---

pass or furlough privileges; and (9) visitation privileges, excluding attorney visits. Punitive segregation involves restriction to a housing unit and appears to differ solely in the amount of exercise time that is allotted based upon the area in which the inmate is housed and to that unit's designated exercise area.

retraction justified by considerations underlying our penal system." Sandin v. Conner, 515 U.S. 472, 475 (1995) (internal quotations and citations omitted). In this case, the type of privileges taken from the plaintiff are not so fundamental as to constitute constitutionally protected liberty interests. See id. (noting that liberty interests are implicated when a prisoner is subject to "atypical, significant deprivation[s]"). Consequently, the plaintiff was not entitled to the full panoply of due process protections afforded when liberty interests are at stake. The magistrate judge correctly recognized, however, that the plaintiff was entitled to some measure of process.

West Virginia Department of Corrections Policy Directive 325.00 prescribes the relevant procedures that West Virginia affords to inmates in disciplinary matters. When an inmate is charged with a Class II violation, as the plaintiff was in each of the disciplinary proceedings here, he is entitled to, inter alia, notice of the charges against him, the opportunity to present witnesses and evidence on his behalf, and the right to confront the witnesses against him. WVDOC Policy Directive 325.00. These procedures, which were afforded the plaintiff in his disciplinary hearings, more than adequately comport with due process.[2]

_____

[2]Indeed, as the magistrate judge noted, the WVDOC policy provides nearly all of the procedural protections that the United States Supreme Court, in Wolff v. McDonnell, 418 U.S. 539 (1974), held are constitutionally required in proceedings that involve the liberty interests of a prisoner. Since no liberty interests were

Accordingly, Counts I, II, and III, to the extent that they allege due process violations, must be dismissed for failure to state a claim.

      b.  <u>Religious Discrimination</u>

Plaintiff has also alleged that the following Native American religious items were confiscated from him upon entry into St. Marys: (1) homemade pipe bowl; (2)homemade pipe stem; (3) eight feathers; (4) a can of sage; (5) incense burners; and (6) a red towel. This allegation raises a First Amendment question regarding whether the initial seizure of plaintiff's religious items constituted a violation of plaintiff's right to free exercise of religion.

The magistrate judge found that this claim is not yet cognizable before this Court because the plaintiff failed to exhaust all necessary administrative remedies. The plaintiff objected to this finding and avers that he did, in fact, "follow all institutional grievance procedures."

This Court finds, <u>de novo</u>, that plaintiff did not exhaust his administrative remedies with regard to his free exercise of religion claim. Under the PLRA, a prisoner bringing an action "with respect to prison conditions" under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. 42 U.S.C.

---

implicated in the disciplinary proceedings against the plaintiff here, Roddy has received procedural protections even beyond those to which he is constitutionally entitled.

§ 1997e.  Exhaustion under § 1997e is mandatory, <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001), and applies to "all inmate suits about prison life."  <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002).  If failure to exhaust is apparent from the complaint, federal courts have the authority pursuant to 28 U.S.C. § 1915 to dismiss the case <u>sua sponte</u>.  <u>Anderson v. XYZ Prison Health Servs.</u>, 407 F.3d 674, 682 (2005).

In this case, plaintiff's claim that he was wrongfully deprived of religious items during his incarceration at St. Marys is one "with respect to prison conditions" within the meaning of the PLRA.  Therefore, plaintiff is required to exhaust internal grievance procedures before he can receive federal court review.

From the volume of exhibits filed by the plaintiff, it is clear that plaintiff is well acquainted with the three level grievance process established by the West Virginia Department of Corrections ("WVDOC") for the resolution of prisoner complaints. Plaintiff has provided this Court with evidence of many grievances that he has filed by utilizing the appropriate channels.  Within all of this documentation, however, there is no evidence that plaintiff has pursued any administrative remedy regarding the confiscation of his religious items.[3]  Isolated and unspecific

---

[3]Plaintiff has pursued, to varying extents, grievances regarding the following allegations: (1) that COII Dennis Mueller called him a "Raging Field Mouse;" (2) that Susan Wade opened his incoming legal mail outside of his presence; (3) that Barbara Renner improperly confiscated a legal document from him while

statements that the WVDOC is "racist" or "pradisist [sic] against Native American belief" in grievances raising wholly different allegations are insufficient to constitute exhaustion on the issue of confiscation of plaintiff's religious items. Therefore, this Court dismisses plaintiff's potential free exercise claim without prejudice for failure to exhaust administrative remedies.

Accordingly, because no allegations remain in Counts I, II, and III that state a claim upon which relief can be granted, those counts are dismissed in their entirety subject to the without prejudice limitation on dismissal of the plaintiff's free exercise claim.

2.   Retaliatory Acts: Count IV

In Count IV of the complaint, the plaintiff alleges that COII Duane Munday ("Munday") wrote him up for a Class I Assault and Battery. Plaintiff avers that this was a retaliatory act because plaintiff is a "personal close friend" of an "unnamed inmate" who has an "ongoing conflict" with Munday's brother, who is also employed at St. Marys.

The magistrate judge noted that plaintiff's retaliation claim has not been exhausted. In a suit brought by a prisoner that fails to state a claim upon which relief can be granted, courts may dismiss the underlying claim without first requiring exhaustion of

---

making photocopies; and (4) that Native American services at the prison are frequently cancelled.

administrative remedies.  42 U.S.C. § 1997e.  Therefore, because the magistrate judge concluded that plaintiff also failed to state a claim here, he recommended dismissal.

Plaintiff objected to this recommendation by averring that he exhausted his administrative remedies on this claim.  This objection is unavailing because the magistrate judge did not base his recommendation on failure to exhaust.  Nonetheless, because an objection was filed, this Court will review the magistrate judge's recommendation <u>de novo</u>.

In order to sustain a retaliation claim, a prisoner must allege "either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act violated such a right."  <u>Adams v. Rice</u>, 40 F.3d 72, 75 (4th Cir. 1994).  Further, "<u>in forma pauperis</u> plaintiffs who allege that their constitutional rights have been violated by official retaliation must present more than naked allegations of reprisal" to survive dismissal for frivolousness pursuant to 28 U.S.C. § 1915(e).  <u>Id.</u>  Permitting baseless allegations to move forward would open up the prospect of endless claims of retaliation on the part of inmates and would embroil the courts in every disciplinary act that occurs in state penal institutions.  <u>Id.</u>

In this case, the plaintiff has made a naked and baseless claim of reprisal.  Plaintiff's complaint fails to contain any factual allegations tending to support his bare assertion that

Munday retaliated against him. Accordingly, Count IV is dismissed pursuant to 28 U.S.C. § 1915(e).

   3.   <u>Legal Mail: Count V</u>

   In Count V of the complaint, the plaintiff alleges that Susan Wade ("Wade"), the former postal supervisor at St. Marys, opened his incoming legal mail from the American Civil Liberties Union ("ACLU") outside of his presence.

   The magistrate judge found that the mail in question did not constitute legal mail or privileged mail and as such plaintiff's presence was not required before Wade could open it.   The magistrate judge recommended that Count V be dismissed for failure to state a claim because under United States Supreme Court case law and WVDOC Policy Directive 503.00, an inmate's presence is not required in order for prison officials to open and inspect non-legal and non-privileged mail.

   The plaintiff objects to this recommendation on the grounds that WVDOC Policy Directive 503.00 is unconstitutional. Plaintiff, however, failed to question the constitutionality of the policy directive in his original complaint or in any of his motions to amend.   As a general rule, a question regarding the constitutionality of a law or policy must be raised at the earliest opportunity consistent with good pleading and orderly procedure, or it will be considered waived.  16 C.J.S. <u>Constitutional Law</u> § 179 (citing <u>Curtis Pub. Co. v. Butts</u>, 388 U.S. 130 (1967)).  Because

the plaintiff failed to raise a constitutional challenge to WVDOC Policy Directive 503.00 in his initial complaint or even in his first, second, third, or fourth motions to amend, the plaintiff has waived the right to raise that claim here in his objections to the magistrate judge's report and recommendation.

Nonetheless, even if the plaintiff's constitutional claim were timely raised, the plaintiff has failed to prove or submit sufficient evidence that the directive is unlawful or unconstitutional. Although excessive restrictions on correspondence may implicate a prisoner's constitutional rights to free speech and access to the courts, it is well settled that mail may be subjected to reasonable regulation consistent with legitimate policies of internal prison administration and security. See Wolff, 418 U.S. at 577; Burns v. Swenson, 430 F.2d 771 (8th Cir. 1970). The WVDOC policy on attorney-client mail provides that such mail "may be inspected by staff, in the presence of the inmate, for contraband before it is sealed." WVDOC Policy Directive 503.00. As recognized by the United States Supreme Court, when prison management creates a rule "whereby the inmate is present when mail from attorneys is inspected, [they] have done all, and perhaps even more, than the Constitution requires." Wolff, 418 U.S. at 577. Accordingly, the plaintiff has failed to allege any facts upon which WVDOC Policy Directive 503.00 can be found unconstitutional.

Further, the defendants did not violate WVDOC Policy Directive 503.00 by opening plaintiff's incoming mail from the ACLU outside of his presence because the correspondence did not constitute "legal mail." WVDOC Policy Directive 503.00 provides that attorney-client mail constitutes "any written correspondence to or from an inmate and his/her attorney of record." The letter in question, dated May 3, 2004, was simply a courtesy response by the ACLU to a previous letter by the plaintiff requesting assistance. The staff attorney who signed the letter is not plaintiff's counsel of record and the letter contains no specific information regarding any legal action. Consequently, the letter at issue does not qualify for the heightened protection afforded "legal mail."

Additionally, the letter does not constitute "privileged mail" which, under WVDOC Policy Directive 503.00, may be inspected only in the presence of the inmate. Privileged mail includes, but is not limited to, mail to courts, counsel, officials of the West Virginia DOC, etc. The letter at issue does not fall within this definition as provided by WVDOC Policy Directive 503.00.

Finally, assuming _arguendo_, that the letter was "legal mail," the plaintiff has not made any allegation that, as a result of the opening of this letter, he was denied his constitutional right to access the courts. In order to show a denial of access to the courts, an inmate must demonstrate that conduct by prison officials has "hindered [his] efforts to pursue a legal claim." _Lewis v._

<u>Casey</u>, 518 U.S. 343, 351 (1996). No such showing has been made here.

Accordingly, because plaintiff alleges no facts upon which relief can be granted regarding the opening of the May 3, 2004 letter from the ACLU, Count V of his complaint must be dismissed for failure to state a claim.

4. <u>Seizure of Property: Count VI</u>

In Count VI of the complaint, the plaintiff alleges that Barb Renner, an institutional paralegal, seized a document from him while she was copying materials for him involving a pending federal case. Plaintiff alleges that the document taken was a photocopy of another inmate's Bureau of Indian Affairs ("BIA") membership card and that the other inmate had given the plaintiff permission to possess the copy.

The plaintiff filed a grievance which Commissioner Rubenstein remanded to Warden Fox for a detailed discussion regarding the description and content of the document in question and why it was confiscated as contraband. After receiving the Warden's response, Commissioner Rubenstein supported the decision to confiscate the card "inasmuch as it is an excessive risks [sic] to security and the orderly operation of an institution to allow one inmate to possess the identifying information from another inmate." (Doc. 9-5, pg. 36).

The magistrate judge also concluded that the document was properly confiscated in light of institutional security concerns and recommended that Count VI be dismissed.

The plaintiff's objection to the magistrate judge's recommendation on this count merely repeats the arguments asserted in his complaint. The plaintiff objects by asserting that Ms. Renner was prohibited by the United States Constitution, WVDOC policy, and federal case law from reading and confiscating the BIA card.

Upon de novo review, this Court concludes that the magistrate judge's recommendation must also be affirmed on this count. The United States Supreme Court has long recognized that "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." Bell v. Wolfish, 441 U.S. 520, 559 (1979). Mutual accommodation between institutional needs and objectives and the constitutional rights of prisoners is necessary to assure internal security within corrections facilities. See id.

Problems that arise in the routine operation of a correctional facility are not often easily resolved. Id. Therefore, "prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their

judgment are needed to preserve internal order and discipline and to maintain institutional security." Id. at 560.

In this case, it is not unreasonable to believe that the plaintiff's possession of another inmate's identifying information might pose a security risk. Accurate identification of inmates is undoubtedly an institutional necessity within a prison. Therefore, the prison's interest here in maintaining security outweighs any arguable constitutional right that the plaintiff might have to possess another individual's BIA card.

Furthermore, to the extent that the plaintiff alleges that the confiscation of the BIA card somehow interfered with his ability to pursue a case that he filed in the Southern District of West Virginia, such a claim is more appropriately presented to that court.

### 5. Actions by the State Troopers: Count VII

In Count VII of the complaint, the plaintiff seems to allege that West Virginia State Troopers M.H. Bauso ("Bauso") and D.L. Stafford ("Stafford") wrongfully declined to pursue a criminal investigation against several of the defendants. The plaintiff alleges that following an interview with Bauso and Stafford, the troopers advised him that the issues plaintiff raised in the interview were institutional ones rather than matters for the state police. The plaintiff maintains that this failure to act on the part of the troopers caused him mental anguish, denied him access

19

to the courts, deprived him of due process, amounted to discrimination, and violated his right to equal protection.

The magistrate judge recommended that Count VII be dismissed on at least one, but potentially two grounds. First, since the plaintiff failed to indicate whether he is suing the state troopers in their official or individual capacities, Count VII may be barred by the Eleventh Amendment which prohibits § 1983 suits against state employees in their official capacities. Second, even if the plaintiff intended to sue the troopers in their individual capacities, the plaintiff failed to state a claim upon which relief can be granted.

The plaintiff's only objection to the magistrate judge's above recommendation is that "he did, in fact, enclose copies of all statements, and a Demand for Judgement [sic]" and that he is "prepared to submit them again, should the need arise."

This Court finds, de novo, that the recommendation of the magistrate judge is correct and must be affirmed. Federal Rule of Civil Procedure 8(a) requires that a complaint set forth "a short and plain statement showing that the pleader is entitled to relief." In order to state a claim under 42 U.S.C. § 1983, the plaintiff must demonstrate that a person acting under color of state law deprived him of rights guaranteed by the Constitution or federal laws. Rendall-Baker v. Kohn, 457 U.S. 830, 838 (1982).

In this case, the plaintiff has failed to make any factual allegations in Count VII that would entitle him to relief. Although Rule 8 provides a very liberal framework for pleadings, "more detail is required than the bald statement by plaintiff that he has a valid claim of some type against the defendant." Migdal v. Rowe Price-Fleming Int'l., Inc., 248 F.3d 321 (4th Cir. 2001). The plaintiff's objection that "he did, in fact, enclose copies of all statements," with his complaint is irrelevant because those statements were simply insufficient to state a claim and will remain insufficient if re-submitted. Therefore, Count VII is dismissed for failure to state a claim.

6. Racial Slurs: Count VIII

In Count VIII, the final count of his complaint, the plaintiff alleges that COII Dennis Mueller called him a "Raging Field Mouse," which he found highly offensive. The magistrate judge found that this allegation, even if true, fails to state a claim for relief under 42 U.S.C. § 1983 and recommended that the count be dismissed. The plaintiff's objection to this recommendation again was simply that "he did, in fact, enclose copies of all statements."

This Court concludes, de novo, that plaintiff once more has failed to state a claim. As properly noted by the magistrate judge, name-calling alone cannot form the basis of a constitutional violation because no liberty interest is at stake. See Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985). The isolated use of

verbal harassment or abuse, even when directed at a person's religious and ethnic background, is not sufficient to state a constitutional deprivation under § 1983. <u>See</u> <u>Freeman v. Arpaio</u>, 125 F.3d 732, 738 (9th Cir. 1997); <u>Collins v. Cundy</u>, 603 F.2d 825, 827 (10th Cir. 1979).

Furthermore, the plaintiff's claim that he was defamed by the defendant's statement is not compensable under § 1983. Damages for defamation are not recoverable under § 1983 because the defamed person has not been deprived of any right, privilege or immunity secured to him by the federal constitution or laws of the United States. <u>Ellingburg v. Lucas</u>, 518 F.2d 1196 (8th Cir. 1975).

Therefore, the plaintiff fails to state a claim for relief under 42 U.S.C. § 1983 and this Court must dismiss Count VIII accordingly.

B.   <u>Motions to Amend</u>

The plaintiff has filed four motions to amend his complaint. Following review of each of the motions, the magistrate judge recommended that each motion be denied. Since the plaintiff has not filed any objections to this portion of the magistrate judge's recommendation, this Court will apply the "clearly erroneous" standard of review.

First, on October 21, 2005, the plaintiff filed a letter requesting the addition of two exhibits to his file and the addition of Karol Payne, Rachel Glasscock, Jaell Fulton and Sheila

Ramsey to his list of defendants. Federal Rule of Civil Procedure 15(a) provides that "a party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served." Since at the time plaintiff filed this initial motion to amend no responsive pleading had been filed, the magistrate judge properly determined that as a matter of course, the amendment must be permitted.

However, because the amended pleading does little more than list the names of new defendants, the magistrate judge found that the pleading should be dismissed for failure to state a claim. This Court agrees. The plaintiff has failed to meet the pleading requirements of Federal Rule of Civil Procedure 8(a). Under Federal Rule of Civil Procedure 15(a), a court may deny leave to file an amended complaint which would be subject to immediate dismissal for failure to state a claim. Hayden v. Grayson, 134 F.3d 449, 454-56 (1st Cir. 1998). Because the magistrate judge and this Court are unable to discern what claims, if any, plaintiff may have against the individuals added in this amendment, the amendment is dismissed for failure to state a claim.

Second, on November 7, 2005, plaintiff filed a second motion to amend seeking to add more exhibits and the following additional defendants: Patrick Mirandy and Sandy Tanczyn. Rule 15(a) provides that, after an initial amendment, "a party may amend the party's pleading only by leave of court or by written consent of the

adverse party." The magistrate judge recommended denial of this amendment because in the amended pleading plaintiff attempts to assert claims on behalf of other inmates.

The magistrate judge properly concluded that the plaintiff does not have standing to raise the claims of another. <u>See</u> <u>Laird v. Tatum</u>, 408 U.S. 1 (1972); <u>Hummer v. Dalton</u>, 657 F.2d 621 (4th Cir. 1981) (a prisoner cannot act as a "knight-errant" for others). Therefore, because the plaintiff has failed to state a claim against Mirandy and Tanczyn, his second motion to amend is denied.

Third, on February 1, 2006, plaintiff filed a third motion to amend. In the motion, plaintiff seeks the addition of the following twelve individuals or entities: Jaell Fulton,[4] Patrick Mirandy,[5] Corrective Medical Services, Diane Shingler, Karol Payne, Vickie Cain, Tammy Harland, Misty Adams, Jack Stollings, Shiela Ramsey, Capt. Anderson, and Katy Pratt.

As to Fulton, Shingler, Payne, Cain, and Harlan, the magistrate judge recommended denial of the third motion to amend because the plaintiff asserts claims against them that are wholly unrelated to any of the claims raised in his original complaint. The magistrate judge's conclusion on this matter is not clearly erroneous and must be affirmed because the plaintiff is attempting

---

[4]Plaintiff also sought to add Jaell Fulton in his first motion to amend.

[5]Plaintiff also sought to add Patrick Mirandy in his second motion to amend.

to add Freedom of Information Act claims which have no relation to the occurrences at issue in the original complaint or the defendants named in the original complaint. Although leave to amend under Federal Rule of Civil Procedure 15(a) should "be freely given when justice so requires," it may be denied when the amendment would prejudice the opposing party. <u>Howze v. Jones & Laughlin Steel Corp.</u>, 750 F.2d 1208, 1212 (3d Cir. 1984). Because allowing the plaintiff to add wholly unrelated claims to his complaint would cause significant prejudice to the defendants, plaintiff's request to add Freedom of Information Act claims is denied.

Regarding Adams, Stollings, and Anderson, some of the plaintiff's claims against them appear to relate to the disciplinary hearings that plaintiff challenged in Counts I, II, and III of his initial complaint. Since those counts were dismissed above for failure to state a cause of action, the magistrate judge found that these amendments should likewise be dismissed. This Court finds no clear error in this recommendation because, as previously determined, the disciplinary hearings afforded the plaintiff all manner of process that he was constitutionally due.

As concerns Ramsey and again Adams and Stallings, the plaintiff raises additional "legal mail" allegations that appear to pertain to incidents separate from the one raised in Count V of the

complaint. The magistrate judge's report recommended denial for failure to state a claim. The plaintiff alleges that personal mail to his family that contained legal material was opened and read without his knowledge and outside of his presence. Different standards apply regarding the inspection of personal versus legal mail. See Altizer v. Deeds, 191 F.3d 540, 548-49 (4th Cir. 1999). Pursuant to WVDOC Policy Directive 503.00, personal mail is classified as general correspondence and as such, is subject to random inspection and review. Since plaintiff admits that the correspondence at issue was a letter to his family, the mail qualifies as personal, not legal, mail. Thus, even viewed in a light most favorable to the plaintiff's allegations, the plaintiff fails to state a claim upon which relief can be granted because under WVDOC Policy Directive 503.00, personal mail may be opened and inspected by prison officials. Accordingly, the magistrate judge's recommendation that this amendment be denied for failure to state a claim is not clearly erroneous.

As to Pratt, the plaintiff raises another legal mail allegation. The plaintiff claims that a letter he attempted to send to the Cherokee Nation regarding this and other federal litigation was opened, read, and confiscated outside of his presence. Under WVDOC Policy Directive 503.00, however, the Cherokee Nation is not a member of the class of persons and organizations to whom and from whom correspondence is privileged.

Thus, prison officials had the authority to open and inspect this letter for contraband outside of plaintiff's presence. Further, the plaintiff has made no allegation that the defendants' conduct "hindered [his] efforts to pursue a legal claim." <u>Lewis</u>, 518 U.S. at 351. The Court finds no clear error in the magistrate judge's recommendation to dismiss this amendment.

Fourth, and finally, the plaintiff's last motion to amend seeks to increase his claim for damages to $340,000,000.00 and renews his request for a temporary restraining order. The magistrate judge concluded that this motion should be denied because neither the plaintiff's original complaint nor his amended complaints state a claim upon which relief can be granted. Accordingly, because the plaintiff's request for more damages is based on pleadings that fail to state claims, that request is moot and there is no clear error in the magistrate judge's recommendation that it be denied.

C.   <u>Motion for Injunctive Relief</u>

On November 7, 2005, plaintiff filed a motion requesting an "RTO Restraining Order." Plaintiff appears to allege that he fears retaliation from prison officials as a result of this federal action. Because the type of relief plaintiff seeks is more consistent with a motion for injunctive relief, the magistrate judge, in light of plaintiff's <u>pro se</u> status, construed the motion as seeking a preliminary injunction under Federal Rule of Civil

Procedure 65(a) rather than a temporary restraining order pursuant
to Federal Rule of Civil Procedure 65(b).

The magistrate judge, upon finding that the plaintiff failed
to make any showing that he will be harmed if an injunction does
not issue, recommended that the plaintiff's motion for injunctive
relief be denied.  The plaintiff filed no objections.  This Court
finds no clear error in the magistrate judge's recommendation.

The magistrate judge correctly applied the standard for
granting injunctive relief as set forth in <u>Blackwelder Furniture
Co. v. Seilig Mfg. Co.</u>, 550 F.2d 189 (4th Cir. 1977).  In
considering a motion for injunctive relief, the Court must utilize
a balancing-of-hardships test that considers each of the following
factors:

> (1)  the likelihood of irreparable harm to the plaintiff
> if the preliminary injunction is denied;
>
> (2)  the likelihood of harm to the defendant if the
> request is granted;
>
> (3)  the likelihood that the plaintiff will succeed on
> the merits, and
>
> (4)  the public interest.

<u>Id</u>. at 196; <u>see also</u> <u>Direx Israel, Ltd. v. Breakthrough Medical
Corp.</u>, 952 F.2d 802, 812 (4th Cir. 1991)(citations omitted).  The
most important consideration in the analysis is whether a
substantial imbalance of hardship exists between the parties.
<u>Blackwelder</u>, 550 F.2d at 196.  The burden is on the party seeking

the injunction to show that each of the factors supports a grant of injunctive relief.  Direx, 952 F.2d at 812.

Failure by the plaintiff to make a "clear showing" that he will suffer "actual and imminent" irreparable harm in the absence of an injunction must result in denial of a motion for injunctive relief.  Id.

In this case, as correctly recognized by the magistrate judge, the plaintiff has failed to make any showing at all that he will suffer imminent irreparable harm.  Aside from a bald allegation that the defendants will retaliate against him for bringing this suit, the plaintiff alleges no facts to support that such injury is either actual or imminent.  Accordingly, the plaintiff's motion for injunctive relief is denied.

### III.  Conclusion

Because, after a de novo review, this Court concludes that the magistrate judge's recommendation is proper and the plaintiff's objections to the report and recommendation lack merit, this Court hereby AFFIRMS and ADOPTS the magistrate judge's report and recommendation in its entirety, with the exception that the dismissal of the plaintiff's free exercise of religion claim be without prejudice.

Should the petitioner choose to appeal the judgement of this Court to the United States Court of Appeals for the Fourth Circuit, he is ADVISED that he must file a notice of appeal with the Clerk

of this Court within 30 days after the date of the entry of the judgment order. Upon reviewing the notice of appeal, this Court will either issue a certificate of appealability or state why a certificate should not issue in accordance with Federal Rule of Appellate Procedure 22(b)(1). If this Court should deny a certification, the petitioner may request a circuit judge of the United States Court of Appeals for the Fourth Circuit to issue the certificate.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to plaintiff and counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:    September 21, 2006


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE