IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**BOBBY EUGENE RODDY,**
also known as RUNNING COUGAR,

    **Plaintiff,**

    v.                                      Case No. 5:05cv170
                                                  (Judge Stamp)

**STATE OF WEST VIRGINIA,
OFFICE OF THE GOVERNOR,
MARY JO THOMPSON, DANIEL E. KIMBLE,
JIM RUBENSTEIN, M.H. BAUSO,
D.L. STAFFORD, WILLIAM FOX,
TONY LeMASTERS, DON SPRINGSTON,
DAN KIMBLE, WILLIAM D. HALE,
BARBARA RENNER, REV. KENT HOBBS,
ROBERT ADAMS, DENNIS MUELLER,
DUANE MUNDAY, SUSAN WADE,
JOE CARROLL, MICHAEL HENTHORN,
JANE DOE, JOHN DOE, JAELL FULTON,
CORRECTIVE MEDICAL SERVICES,
DIANE SHINGLER, KAROL PAYNE,
VICKIE CAIN, TAMMY HARLAN,
PATRICK MIRANDY, SHIELA RAMSEY,
JACK STOLLINGS, MISTY ADAMS,
CAPT. ANDERSON and KATY PRATT,**

    **Defendants.**

## REPORT AND RECOMMENDATION

### 1. Procedural History

On July 14, 2005, Bobby Eugene Roddy ("Roddy") filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 against the State of West Virginia and a number of state officials. Subsequently, on October 3, 2005, the suit was transferred to this Court from the United States District Court for the

Southern District of West Virginia. The case was then referred to the undersigned United States Magistrate Judge for an initial review and report and recommendation pursuant to Local Rules of Prisoner Litigation Procedure 83.01, *et seq*., and 28 U.S.C. § 1915(e)(2). On July 27, 2006, the undersigned issued a report which recommended that the plaintiff's complaint be dismissed, that all of the plaintiff's motions to amend be denied, that plaintiff's motion for a restraining order be denied, and that this case be dismissed with prejudice. On August 7, 2006, Roddy filed an objection to the report and recommendation styled as "Notice of an objection to a Court of Appeals from a Judgment or Order of a District Court." On August 8, 2006, the undersigned issued a supplemental report and recommendation clarifying that it was also recommended that plaintiff's second motion to amend be denied. On August 21, 2006, the plaintiff filed a statement of objections to the report and recommendation.

Following a review of the report and recommendation, the Court issued a Memorandum Opinion and Order on September 21, 2006. Because objections had been filed, the Court made an independent *de novo* consideration of those recommendations to which objections were filed. The remaining recommendations, to which Roddy filed no objection, were reviewed using the clearly erroneous standard. The Court then concluded that the undersigned's recommendation was proper, and the plaintiff's objections lacked merit. Accordingly, the Court affirmed and adopted the report and recommendation in its entirety, with the exception that the dismissal of the plaintiff's free exercise of religion claim be denied without prejudice.

Roddy then appealed the Court's order. Roddy raised three issues on appeal: (1) that his legal mail was improperly opened; (2) that the West Virginia Department of Corrections' Policy Directive 503.00 is unconstitutional; and (3) that his free exercise of religion claim was improperly

dismissed. In an unpublished opinion, dated April 16, 2007, the United States Court of Appeals for the Fourth Circuit found no reversible error on the first two issues. Accordingly, the Court of Appeals affirmed for the reasons stated by this Court. However, for Roddy's third claim, the Court of Appeals vacated and remanded in light of the Supreme Court's opinion in <u>Jones v. Brock</u>, 127 S.Ct. 910 (2007). (<u>Roddy v. West Virginia</u>, No. 06-7754).

On May 3, 2007, the Court entered an Order of Reference. In that order, the Court designated and authorized the undersigned to consider the record and do all things proper to determine or make recommendations for the disposition of Roddy's complaint consistent with the opinion of the United States Court of Appeals. More specifically, the order directed the undersigned to consider Roddy's free exercise of religion claim in light of the Supreme Court's opinion in <u>Jones v. Brock</u>, <u>supra</u>.

## **II. Pertinent Case Law**

As noted by the Supreme Court in its decision in <u>Jones</u>, "[p]risoner litigation continues to 'account for an outsized share of filings' in federal court, <u>Woodford v.Ngo</u>, 548 U.S. —, ----, n. 4, 126 S.Ct. 2378 (2006) (slip Op., at 12, n.4). In 2005, nearly 10 percent of all cases filed in federal courts nationwide were prisoner complaints challenging prison conditions or claiming civil rights violations." <u>Jones</u> at 913. The Court also noted that while most of these cases have no merit and many are frivolous, "[o]ur legal system, however, remains committed to guaranteeing that prisoner claims of illegal conduct by their custodians are fairly handled according to the law." <u>Id</u>. Therefore, the courts are faced with the challenge of "ensuring that the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." <u>Id</u>.

Congress addressed that challenge in the Prison Litigation Reform Act ("PLRA") which was

3

intended to "reduce the quantity and improve the quality of prisoners suits." Porter v. Nussle, 534 U.S. 516, 524 (2002). Included in the PLRA is an exhaustion provision which states:

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

42 U.S.C. § 1997e(a).

The Jones' decision reiterates that there is no question that "exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones at 918. However, at issue in the decision were three specific issues:

(1) whether exhaustion under the PLRA is a pleading requirement the prisoner must satisfy in his complaint, or an affirmative defense the defendant must plead and prove;

(2) how courts determine whether a prisoner has properly exhausted administrative remedies- specifically, the level of detail required in a grievance to put the prison and individual officials on notice of the claim; and

(3) what the PLRA requires when both exhausted and unexhausted claims are included in a complaint.[1]

Following an analysis of various opinions from Circuit Courts throughout the country, the Court concluded that the failure to exhaust is an affirmative defense under the PLRA, and that

---

[1]The Jones decision reviewed the action of the United States District Courts for the Western District of Michigan and for the Eastern District of Michigan and the subsequent affirmation of those actions by the Sixth Circuit Court of Appeals. More specifically, the Jones decision considered whether it was error to dismiss a complaint because: (1) the plaintiff later sued an individual not named in the grievance process; (2) the plaintiff has failed to exhaust some, but not all, of the claims in the complaint; and (3) the plaintiff fails to allege and demonstrate exhaustion in his complaint.

inmates are not required to specifically plead or demonstrate exhaustion in their complaints. Jones at 920. In addition, the Court concluded that "the level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system because it is the prison's requirements, and not the PLRA that define the boundaries of proper exhaustion." Id. at 921. Finally, while acknowledging the habeas total exhaustion rule,[2] the Court concluded that there was no reason to depart from the more typical claim-by-claim approach in a § 1983 action. Id. at 924. Therefore, when faced with a complaint that contains both exhausted and unexhausted claims, the presiding court should dismiss the unexhausted claims and proceed with the exhausted. Porter v. Nussle, 534 U.S. 516, 524 (2002).

Although the decision in Jones reversed procedures implemented by the Sixth Circuit Court of Appeals, the decision did not abrogate procedures followed by the Fourth Circuit. Specifically, the Fourth Circuit has found that while exhaustion is an affirmative defense, a district court may inquire "on its own motion whether the inmate has exhausted all administrative remedies." Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 683 (4th Cir. 2005).

### III. Analysis

The portion of Roddy's complaint that is pending on remand alleges that the following Native American religious items were confiscated from him upon his initial entry into the St. Marys Correctional facility: (1) homemade pipe bowl; (2) homemade pipe stem; (3) eight feathers; (4) a can of sage; (5) incense burners; and (6) a red towel. This allegation raises a First Amendment question whether the seizure of those items violated his right to free exercise of religion.

---

[2] Mixed habeas petitions, containing both exhausted and unexhausted claims, cannot be adjudicated. See Rose v. Lundy, 455 U.S. 509, 522 (1982).

In addressing this claim in the original report and recommendation, the undersigned noted that the alleged actions of the defendants constituted actions "with respect to prison conditions" within the meaning of the PLRA, and the requirement of exhaustion of administrative remedies applied to those actions and any effects of those actions.

In his form complaint, Roddy acknowledged that there is a prisoner grievance procedure at St. Mary's, and he also indicated that he presented the facts relating to his complaint in the grievance procedure. Moreover, Roddy noted that the steps he took were "filed per policy, G1, G2 and G3 (enclosed)." Finally, Roddy indicated that all his grievances were denied.

After reviewing the grievances submitted with Roddy's complaint, the undersigned determined that none of them in any way dealt with the confiscation of the religious items he brought with him to St. Marys when he was transferred from the Huttonsville Correctional Center. Therefore, the undersigned concluded that "to the extent that the plaintiff is attempting to raise a claim with regard to the confiscation of those items, the same must be dismissed for failure to exhaust administrative remedies." Upon *de novo* review, the Court agreed that Roddy had not exhausted his administrative remedies with regard to his free exercise of religion claim. Therefore, that portion of the complaint was dismissed without prejudice.

Upon receiving the Order of Reference from the Court, the undersigned concluded that a proper reading of Anderson, supra required the Court to give Roddy the specific opportunity to demonstrate that he had, indeed, exhausted his administrative remedies with respect to the alleged confiscation of his religious items.[3] Therefore, on May 10, 2007, an Order was issued to Roddy

---

[3]The Anderson decision specifically holds that "a district court may raise the issue of exhaustion on its own motion. Except in the rare case where failure to exhaust is apparent from the face of the complaint, however, a district court cannot dismiss the complaint without first

directing that he provide proof that he had exhausted his administrative remedies. On May 17, 2007 Roddy filed his response to that Order. In it, he states that he mailed copies of his G1s, G2s and G3s when he filed his complaint.

The undersigned has once again reviewed every item submitted to the Court with the complaint, as well as the numerous documents submitted after that date. Those materials establish that the plaintiff has exhausted his administrative remedies[4] with regard to the following grievances:

1. The legality of AWO Springston's order on January 12, 2006, to open and inspect his outgoing mail; (Doc. 46, p. 2);

2. His concern that post office workers at St. Mary's are not bonded (Doc. 46-2, p. 1);

3. The seizure of original documents (his birth certificate) that he attempted to mail to the Cherokee Nation (Doc. 46-3, p.1);

4. The confiscation of photocopies of another inmate's BIA card (Doc. 9-5, p. 36);

5. The denial of copies of his medical documents which he claims to need in order to file an application for Social Security Disability Benefits (Doc. 24-6, p. 2); and

---

giving the inmate an opportunity to address the issue." 407 F.2d 674, 681.

[4]The West Virginia Department of Corrections has established a three level grievance process for prisoners to grieve their complaints in an attempt to resolve the prisoners' issues. The first level involves filing a G-1 Grievance Form with the Unit Supervisor. If the inmate receives no response or is unsatisfied with the response received at Level One, the inmate may proceed to Level Two by filing a G-2 Grievance Form with the warden/administrator. Finally, the inmate may appeal the Level 2 decision to the Commissioner of the Division of Corrections. The documents submitted to the Court with the complaint and in subsequent filings, demonstrate that each of the listed grievances include a Level III response from Jim Rubenstein, the Commissioner of the Division of Corrections.

6. The frequent cancellation of Native American's religious services (Doc. 46-4, p. 1).[5]

None of these grievances relates to the confiscation of Roddy's religious items. Furthermore, as noted by this Court in its Memorandum Opinion and Order, "isolated and unspecific statements that the WVDOC is 'racist' or 'pradisist [sic] against Native American belief in grievances raising wholly different allegations are insufficient to constitute exhaustion on the issue of confiscation of plaintiff's religious items." (Doc. 54, pp. 11-12). Therefore, the undersigned once again concludes that the Roddy has failed to exhaust his administrative remedies with respect to the alleged confiscation of his religious items.

## IV. Recommendation

In consideration of he foregoing, it is recommended that the plaintiff's free exercise of religion claim be **DISMISSED WITHOUT PREJUDICE**, and that this case be closed and stricken from the active docket of the Court.

Any party may file, within ten (10) days after being served with a copy of this Recommendation, with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C.

---

[5]The documents also establish that the only grievance that he fully exhausted before he filed his complaint was that dealing with confiscation of another inmate's BIA card which was seized when prison officials were copying legal documents at his request. His remaining grievances were not only not exhausted before he filed his complaint, but were not even initiated until at least five months after he filed the complaint on July 14, 2005.

§ 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last know address as shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATED: January 22, 2008

    /s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE